UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CLOVIS DANIELS, JR.,

                                    Plaintiff,

                    -vs-                                          13-CV-89-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

                                    Defendant.

_____

APPEARANCES:          KENNETH R. HILLER, ESQ.
                      Law Offices of Kenneth Hiller
                      Amherst, New York
                      Attorney for Plaintiff

                      WILLIAM J. HOCHUL, JR.
                      United States Attorney, Western District of New York
                      (MARY C. KANE, AUSA, of Counsel)
                      United States Attorney's Office
                      Buffalo, New York
                      Attorneys for Defendant.

        This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny entered on April 16, 2014.

Item 24.

        Plaintiff Clovis Daniels, Jr., initiated this action pursuant to the Social Security Act,

42 U.S.C. § 405(g) ("the Act"), to review the final determination of the Commissioner of

_____

[1]At the time this action was filed, Michael J. Astrue was the Commissioner of Social Security, and
was properly named in the complaint as the defendant under 42 U.S.C. § 405(g).  On February 14,  2013,
Carolyn W. Colvin became the Acting Commissioner of Social Security, and is hereby substituted as the
defendant in this action, pursuant to § 405(g) ("Any action instituted in accordance with this subsection
shall survive notwithstanding any change in the person occupying the office of Commissioner of Social
Security or any vacancy in such office."), and Rule 25(d) of the Federal Rules of Civil Procedure.  For
continuity, the court will herein refer to Acting Commissioner Colvin as "Commissioner."

Social Security ("Commissioner") denying plaintiff's applications for Social Security Disability Income ("SSDI") and Supplemental Security Income ("SSI") benefits, as provided for in Titles II and XVI of the Act.  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, plaintiff's motion is denied, and the Commissioner's motion is granted.

## BACKGROUND

Plaintiff was born on November 18, 1960 (Tr. 33, 106).[2] He  applied for SSDI and SSI benefits in May 2009, alleging disability due to back, foot and knee pain, and depression, with an onset date of April 25, 2005 (*see* Tr. 106-11).  Upon denial of these applications at the initial level of agency review  (Tr. 53-54, 58-73), plaintiff requested  a hearing which was held on January 12, 2011, before Administrative Law Judge ("ALJ") Robert T. Harvey (Tr. 31-52).  Plaintiff appeared and testified at the hearing, and was represented by counsel.

On February 7, 2011, the ALJ issued a decision denying plaintiff's applications for Title II and Title XVI benefits (Tr. 14-24).  Following the five-step sequential process for evaluating disability claims outlined in the Social Security Regulations at 20 C.F.R. § 416.920(a), the ALJ determined that plaintiff's impairments (including status post amputation of the second toe, left foot; status post bunionectomy of the great toe, left foot, with skin osteotomy and surgical fusion of the second toe; depression; and substance abuse), while severe, did not meet or medically equal the severity of any impairment listed

---

[2]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 9).

at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), specifically, Listings 1.02 (major dysfunction of a joint); 1.03 (surgical arthrodesis of a major weight bearing joint); 12.04 (Affective Disorders); and 12.09 (Substance Addiction Disorders) (Tr. 16-18).  The ALJ found that the evidence in the record, including plaintiff's testimony and statements regarding the limiting effect of his symptoms, reports of treatment and diagnostic testing at the Veterans Administration Medical Center ("VAMC"), and the reports and opinions of consultative and treating medical sources, demonstrated that plaintiff had the residual functional capacity ("RFC") for "light" work,[3] with the limitations that he could not work in areas with unprotected heights or exposure to cold, or around heavy, moving, or dangerous machinery; he could not climb ropes, ladders, or scaffolds; he had occasional limitations in his ability to squat, use foot controls; and he could work in a job with a moderate amount of stress (Tr. 18-24).  Based on this RFC assessment, the ALJ concluded at step four of the sequential evaluation that plaintiff was not disabled within the meaning of the Social Security Act because he was able to perform the physical and mental demands of his past relevant work as a security guard, as he previously performed it (Tr. 24).

The ALJ's decision became the Commissioner's final determination on December 5, 2012, when the Appeals Council denied plaintiff's request for review (Tr. 1-3).  Plaintiff

---

[3]The Social Security Regulations define "light work" as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

then filed this action on January 28, 2013, seeking judicial review of the Commissioner's

decision pursuant to 42 U.S.C. § 405(g), and the parties have both moved for judgment on

the pleadings under Fed. R. Civ. P. 12(c).

In support of his motion for judgment on the pleadings, plaintiff asserts the following

grounds for remanding the case to the Commissioner for further proceedings:

1. The ALJ failed to properly evaluate plaintiff's credibility with respect to his

   subjective complaints of pain;

2. The ALJ failed to obtain an RFC assessment from a treating or consulting

   medical source;

3. The ALJ's conclusion that Mr. Daniels could perform his past relevant work

   as a security guard as he actually performed it is not supported by

   substantial evidence.

*See* Items 16-1, 23.  These grounds are addressed in turn in the discussion that follows.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act provides that, upon district court review of the

Commissioner's decision, "[t]he findings of the Commissioner … as to any fact, if

supported by substantial evidence, shall be conclusive …."  42 U.S.C. § 405(g).

Substantial evidence is defined as evidence which "a reasonable mind might accept as

adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229

(1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v.*

*Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only

to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *see also Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).  Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence.  *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who

had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir.1994).

## II.      Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...."  42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).  As indicated above, the Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R.§§ 404.1520, 416.920.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities...." 20 C.F.R. §§ 404.1520(c),  416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be

found to be disabled.  If the claimant does not have a listed impairment, the fourth step

requires the ALJ to determine if, notwithstanding the impairment, the claimant has the

residual functional capacity to perform his or her past relevant work.  If the claimant has

the RFC to perform his or her past relevant work, the claimant will be found to be not

disabled.  Finally, if the claimant is not capable of performing the past relevant work, the

fifth step requires that the ALJ determine whether the claimant is capable of performing

any work which exists in the national economy, considering the claimant's age, education,

past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000);

*Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the

analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show

that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008

WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the

ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the

applicable medical vocational guidelines (the grids), … [which] take into account the

claimant's residual functional capacity in conjunction with the claimant's age, education,

and work experience."  *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and

citations omitted).  If, however, a claimant has non-exertional limitations (which are not

accounted for in the Grids) that "significantly limit the range of work permitted by h[er]

exertional limitations then the grids obviously will not accurately determine disability

status …."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and

citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a

vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III.    The ALJ's Disability Determination

In this case, as indicated above, ALJ Harvey found at step one of the five-step sequential evaluation process that  plaintiff had not engaged in substantial gainful employment activity since April 25, 2005, the alleged onset date (Tr. 16).  At step two, the ALJ found the evidence in the record sufficient to establish that plaintiff's physical and mental impairments caused significant limitation in his ability to perform basic work activities, qualifying as "severe" within the meaning of the Regulations (*id.*).  At step three, the ALJ determined that plaintiff's impairments did not meet or equal the severity of any listed impairment, specifically considering the criteria for musculoskeletal impairments under Listings 1.02 and 1.03, and mental impairments under Listings 12.04 and 12.06 (Tr. 16-18).

The ALJ then found at step four that plaintiff had the RFC for light work, with several limitations (including avoidance of work involving unprotected heights; exposure to cold; heavy, moving, or dangerous machinery; climbing ropes, ladders, or scaffolds; more than occasional squatting or use foot controls; and more than a moderate amount of stress) (Tr. 18-24).  Upon comparing this RFC to plaintiff's description of the physical and mental demands of his past relevant work as a security guard, the ALJ found that plaintiff would be capable of performing that work as he had previously performed it.  Accordingly, the ALJ determined that plaintiff was not disabled under the Act, and did not proceed to the fifth step of the sequential evaluation (Tr. 24).

## IV.     Plaintiff's Motion

### A.     Assessment of Credibility

Plaintiff contends that the ALJ failed to properly assess plaintiff's credibility with respect to his subjective complaints of pain.  The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged.  *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999)).  The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant.  Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. § 416.929.

The Regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning

the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)–(vii); *see Meadors v. Astrue*, 370 F. App'x 179, 184 n. 1 (2d Cir. 2010). The Commissioner's policy interpretation ruling on this process provides the following further guidance:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In this case, ALJ Harvey related plaintiff's testimony about the limitations of functioning caused by his symptoms, including problems with daily activities such as cleaning, laundry, making his bed, taking out the trash, shopping, and sleeping. He can walk about half a block, stand for 10 minutes, and sit for one hour. His podiatrist, Dr. Marina Maulucci, advised him to avoid standing and to keep his feet elevated, which relieves the pain. He testified that he has constant low back pain, bilateral leg weakness and calf spasms, arthritic hands and knee, and swelling, cramping, and weakness in his right hand (Tr. 19).

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause these symptoms but, considering the lack of evidence to support the level of severity reflected by the hearing testimony, plaintiff's statements concerning the

intensity, persistence, and limiting effects of his symptoms were "generally credible, but not

to the extent alleged" (Tr. 19).  In making these findings, the ALJ discussed the medical

evidence in the extensive treatment records from the VAMC, including reports of several

x-rays, radiographs, and MRIs performed in connection with plaintiff's non-healing fracture

of the second metatarsal of his left foot in April 2005, which led to the eventual amputation

of his left second toe in April 2006 (*see* Tr. 19-24).

The ALJ gave "significant weight" to the report of Dr. Kathleen Kelley, M.D., who

conducted a consultative internal medicine examination of plaintiff on July 1, 2009, at the

request of the Commissioner (*see* Tr. 471-76).  Dr. Kelley reported that plaintiff's major

problem was his feet, which he stated "hurt all the time" (Tr. 471).  Dr. Kelley noted that

plaintiff's left foot was well healed from the 2006 surgeries (*id.*).  On examination, plaintiff

appeared to be in no acute distress.  He walked with a limp favoring his left foot, and was

unable to get up on his left heel.  His stance was otherwise normal, and he used no

assistive devices (Tr. 472).  Examination of the lumbar spine revealed full range of motion,

and straight leg raising in the supine position was to 70 degrees bilaterally, but full in the

sitting position.  Range of motion was also full in his shoulders, elbows, forearms, wrists,

hips, ankles, and knees, with slight crepitus of the right knee.  Strength was full in his upper

and lower extremities.  There were no evident subluxations, contractures, ankylosis, or

thickening, and joints were stable and nontender, with no redness, heat, swelling, or

effusion.  Deep tendon reflexes (DTRs) were physiologic and equal in upper and lower

extremities, and no motor or sensory deficit was noted.  Extremities revealed no cyanosis,

clubbing, or edema; pulses were physiologic and equal; there were no significant

varicosities or trophic changes; and no evident muscle atrophy.  Hand and finger dexterity

were intact, and grip strength was full bilaterally.  The physical examination was otherwise unremarkable.  A left knee X-ray revealed ossification anterior to the patella, which could represent degenerative changes or a variant, but no significant abnormality (Tr. 473-74). Dr. Kelley diagnosed foot arthritis, status post amputation of the left second toe; hypertension; and slight obesity.  Review of the medical reports also indicated possible depression and prepatellar bursitis associated with arthritis of both knees, with pain as reported by plaintiff. Prognosis was fair.  Dr. Kelley concluded that foot pedal work, walking long distances, climbing stairs, kneeling, squatting, crawling, and crouching would all require comfort breaks, but the examination revealed "no other obvious limitation" (Tr. 474).

The ALJ indicated that he gave "some, not great weight" to the opinion of Renee Baskin, Ph.D., who performed a consultative psychiatric evaluation of plaintiff on July 1, 2009, at the request of the Commissioner (*see* Tr. 467-70).  Dr. Baskin concluded that plaintiff would have "minimal to no limitations" in his ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others (Tr. 469-70). In Dr. Baskin's opinion, plaintiff's "medical/physical" problems might interfere with his ability to maintain a regular schedule, and his "stress-related psychiatric problems" might interfere with his ability to function on a daily basis (Tr. 470).  Dr. Baskin recommended continued mandated counseling and routine medical follow-up, with a prognosis of "fair" (*id.*).

The ALJ also discussed the extensive VAMC progress notes in the administrative records, which revealed that in January 2010, Dr. Maulucci performed outpatient bunionectomy surgery on plaintiff's right foot, second toe (*see* Tr. 22, 592-93).  At a post-

op visit on January 19, 2010, plaintiff was "writhing in pain," with marked swelling and hematoma at the surgical incision. It was noted that he was not wearing the post-op shoe or following the doctor's instructions to put full weight on the foot (Tr. 586). At his next follow-up visit a week later it was noted that he was doing well with a walking cast (*id.*). By July 12, 2010, plaintiff was doing "extremely well" and his foot "was fine until he took [a] spinning jump" while playing basketball three weeks earlier (Tr. 738-39). X-rays revealed separation, but the wire was intact. He was prescribed a bone stimulator and instructed to wear a CAM walker or stiff surgical shoe at all times, to have extremely limited ambulation, and to stay on Tylenol (Tr. 738). A July 16, 2010 three-phase bone study revealed a non-healing fracture of the proximal first phalanx of the right foot, with inflammatory changes in the MTP joint region, and degenerative changes were noted in the bilateral knees, left first MTP joint, and right first and second phalangeal joint (Tr. 680-82). Subsequent imaging in August and October 2010 showed satisfactory healing and overall alignment of the right foot (Tr. 679-80).

The ALJ's review of the VAMC progress notes further reflects that, on January 28, 2010, plaintiff was admitted to the WNY Substance Abuse Residential Rehabilitation Treatment Program for treatment of primary addiction to alcohol, and that he completed the program on July 2, 2010 (*see* Tr. 23, 689-94). On discharge, it was noted that plaintiff's foot problems had stabilized, and the "he was competent at discharge and able to return to preadmission activities" (Tr. 694).

Based on this consideration of the evidence, the ALJ determined that plaintiff's medical impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's testimony, while "generally credible," was not entitled to full credit regarding

the intensity, persistence, and limiting effects of the symptoms as alleged. While the ALJ did not directly address all of the factors listed in 20 C.F.R. § 416.929(c)(3), he provided sufficiently specific reasons for his credibility determination—particularly, his conclusion that the extensive VAMC progress notes, consultative examiners' reports, and testimony about daily activities indicate satisfactory stabilization of the physical and mental impairments causing the symptoms. As the Second Circuit has made clear, where the ALJ has provided a thorough explanation for his credibility determination, "and the record evidence permits [the court] to glean the rationale of the ALJ's decision, the ALJ's failure to discuss those factors not relevant to his credibility determination does not require remand." *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

Because the ALJ provided sufficient reasons for his determination that plaintiff's statements regarding the limiting effects of his symptoms were not fully credible, and because the ALJ's discussion of the evidence in the record permits the reviewing court to discern the rationale for this decision, plaintiff is not entitled to a remand on the basis of the ALJ's credibility assessment.

## B.    Failure to Obtain an RFC Assessment From a Medical Source

Plaintiff also contends that the case should be remanded because the ALJ failed to obtain an RFC assessment from a treating or consulting medical source. In this regard, the Second Circuit has long recognized the proposition that, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel …." *Rosa v. Callahan*, 168 F.3d

72, 79 (2d Cir. 1999) (internal quotation marks omitted). On the "flip-side" of this same proposition, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted).

In this case, as indicated above, the record contains extensive treatment records from the VAMC, including reports from plaintiff's treating podiatrist and surgeon, Dr. Maulucci, along with progress notes, radiology reports, surgical reports, discharge summaries, laboratory results, medication records, and behavioral assessments. Furthermore, as discussed above, the ALJ properly relied on the assessments of consultative examiners to determine the extent of plaintiff's functional capacity for work notwithstanding the limitations caused by his physical and mental impairments. *See , e.g., Leach ex rel. Murray v. Barnhart*, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such their opinions may constitute substantial evidence if they are consistent with the record as a whole."); *Mongeur*, 722 F.2d at 1039 (report of consultative physician may constitute substantial evidence). The ALJ therefore had before him substantial evidence that enabled him to render a decision, and further development of the record was not required. *See Tankisi v. Commissioner of Social Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) ("Given the specific facts of this case, including a voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ, we hold that it would be inappropriate to remand solely on the ground that the ALJ

failed to request medical opinions in assessing residual functional capacity."); *Pellam v.*

*Astrue*, 508 F. App'x 87, 90 n. 2 (2d Cir. 2013) (noting that, under the 20 C.F.R.

§ 404.1513(b)(6), "the lack of a source statement will not, by itself, necessarily render the

record incomplete.").

Accordingly, plaintiff is not entitled to a remand based on the ALJ's failure to obtain

an RFC assessment from a treating or consultative medical source.

### C.      Determining Ability to Perform Past Relevant Work

Finally, plaintiff contends that there is insufficient evidence to support the ALJ's

conclusion at step four of the sequential evaluation that plaintiff can perform his past

relevant work as a security guard, considering the ALJ's RFC finding limiting plaintiff to jobs

with no more than a moderate amount of stress.  Plaintiff seeks remand so that the ALJ

can consult a vocational expert.

At step four, it remains the claimant's burden "to demonstrate an inability to return

to h[is] previous specific job and an inability to perform h[is] past relevant work generally."

*Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (emphasis omitted).  "While an

expert is often called upon to explain the requirements of particular jobs, step four of the

analysis does not require that an ALJ consult an expert."  *Petrie v. Astrue*, 412 F. App'x

401, 409 (2d Cir. 2011) (citing 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2)).

In this case, plaintiff testified that his past relevant work as a security guard required

standing all day, and lifting less than 10 pounds (Tr. 46, 138). *See* SSR 82–62, 1982 WL

31386, at *3 (S.S.A. 1982) ("The claimant is the primary source for vocational

documentation, and statements by the claimant regarding past work are generally sufficient

for determining the skill level[,] exertional demands and nonexertional demands of such work."). As discussed above, substantial evidence supported the ALJ's determination that plaintiff had the residual functional capacity for light work, consistent with the demands of the security guard job as he performed it, and plaintiff has not made a showing that this work involved anything more than a moderate amount of stress. Accordingly, plaintiff has not sustained his burden at step four of the sequential evaluation process, and is not entitled to remand on this ground.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 16) is denied, the Commissioner's motion for judgment on the pleadings (Item 15) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   May 28, 2014
p:\pending\2013\13-89.ssa.may21.2014